UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re:

  HOLSTED MARKETING, INC
    d/b/a Holsted Jewelry,

                            Debtor.

Chapter 11

Case No. 16-11683 (JLG)

------------------------------------------------------------x

**DECLARATION OF ROY RATHBUN UNDER
LOCAL RULE 1007-2 IN CONNECTION WITH CHAPTER 11
FILING AND IN SUPPORT OF CERTAIN "FIRST DAY" MOTIONS**

Roy Rathbun declares pursuant to 28 U.S.C. § 1746 as follows:

**BACKGROUND**

1. On June 8, 2016 (the "**Petition Date**"), Holsted Marketing, Inc. (the "**Debtor**"), filed a voluntary petition for relief under chapter 11 of title 11, United States Code (the "**Bankruptcy Code**") in this Court.  The Debtor is authorized to continue to operate and manage its business and property as a debtor in possession under Bankruptcy Code sections 1107(a) and 1108.

**Nature of Debtor's Business and Assets**

2. The Debtor provides multi-channel marketing strategies for its retail clients and under its own brand, Holsted Jewelers. The Debtor's primary business is the promotion of merchandise through the utilization of mailing lists obtained from its clients as well as direct to the consumer. The Debtor also sells merchandise on its web site, HolstedJewelers.com, and merchandise on a wholesale basis to its direct marketing clients.

3. The Debtor owns a 50% interest in Intelligent Solutions Direct, LLC which is engaged in the business of order processing and fulfillment of merchandise programs in the United States.

4. In 1971, Richard Holstein founded the Debtor which is incorporated in New York State. Victor Benson became the President of the Debtor in 1985, and continues in that

role today. The Debtor's Board of Directors consists of Victor Benson and Susan Benson. The Debtor's shareholders are as follows:

- Victor Benson: 89.29%
- Roy Rathbun: 3.57%
- Ashwin Shah: 7.14%

**The Debtor's Previous Chapter 11 Case and Confirmed Plan**

5. On August 28, 2012, the Debtor filed a case under chapter 11 of the Bankruptcy Code in this Court, designated Case No. 12–13672 (JMP) (the "**Original Case**"). The Debtor's business had sustained significant losses during the global financial recession, and the Debtor filed the Original Case with the hope of restructuring and downsizing its business, and proposing a plan to pay its creditors.

6. On July 29, 2013, the Court confirmed the Debtor's chapter 11 plan of reorganization (the "**Original Plan**"), and the Original Plan became effective on August 13, 2013 (the "**Effective Date**"). The Debtor has made some, but not all, of the payments due under the Original Plan. The Debtor's current financial condition does not allow it to make the necessary payments and the Debtor finds itself in arrears on its post-confirmation obligations in the approximate amount of $149,598.37, with a total remaining due under the Original Plan of $203,099.52.

**Financing Agreement with Rosenthal & Rosenthal, Inc.**

7. Since 2005, the Debtor has financed its operations through a credit and security agreement with Rosenthal & Rosenthal, Inc. ("**R&R**"). Pursuant to the Original Plan, the Debtor's original credit facility with R&R was replaced with a new facility on substantially similar terms (the "**Credit Facility**"), which the Debtor continues to utilize in its operations.

8. As of June 3, 2016, the Debtor was indebted to R&R in the approximate amount of $1,238,107.72 with respect to the Credit Facility. That debt is secured by substantially all of the Debtor's assets, including accounts receivable and inventory.

**The Decline in the Debtor's Business**

9.  Since the Effective Date, the Debtor has attempted to continue its business operations while reducing overhead expenses and transitioning to new sales methods. However, weak demand for the Debtor's products over the past six months has become a significant drain on the Debtor's finances.

10. The Debtor believes that, under the protection of this Court, it will be able to either restructure its business around its new business model or, if necessary, sell that portion of its business, and propose a confirmable chapter 11 plan.

**The Debtor's Liabilities and Assets**

11. As of June 7, 2016, the Debtor, on an unaudited basis, had total assets with a book value of approximately $2.9 million and total liabilities of approximately $5.1 million.

12. In 2015, the Debtor had losses of approximately $869,000 on revenues of $25.6 million. For the calendar year ending December 31, 2016, assuming that the Debtor is unable to reorganize by that time, the Debtor projects that it will have losses of approximately $1.4 million on revenues of $15.6 million.

**The First Day Motions**

13. On the Petition Date, the Debtor filed certain "First Day" motions seeking emergency relief. As set forth below, I believe that obtaining the relief requested in each of the First Day motions is critical to avoid irreparable harm to the Debtor, its business, and its prospects for maximizing the value of its business as a going concern.

**Application to Authorize the Debtor to Obtain
Post-petition Financing and to Use Cash Collateral**

14. Through the Debtor's application to obtain debtor-in-possession financing and use cash collateral, the Debtor seeks to continue the use of its revolving Credit Facility from R&R. Subject to protections provided for in the proposed order annexed to the application, R&R has consented to such relief.

15. The Debtor's obtaining post-petition financing and using cash collateral is essential to the continued operation of its business. As described herein, the Debtor intends to restructure its business around a smaller business model, and requires the continuation of the Credit Facility and use of cash collateral to continue its business operations.

16. Without access to financing and the use of cash collateral, the Debtor cannot pay its essential employees or operating expenses necessary to a successful reorganization. In addition, without such financing, Debtor will not be able to satisfy its post-petition obligations, which will significantly reduce its value as a going concern. The Debtor requires the financing and use of R&R's cash collateral in order to run day-to-day business operations, and will suffer irreparable harm if it is prevented from doing so.

17. Moreover, prior to the filing of the Original Case, the Debtor attempted to obtain conventional financing to finance its operations, but was unsuccessful due to the nature of the Debtor's business and the amount of customer returns that the Debtor receives. R&R has been the Debtor's secured lender since 2005, and has a comfort with the Debtor's operations and business structure that any new conventional lender would not share. Thus, any effort on the part of the Debtor to secure a new source of post-petition financing would be fruitless.

**Application to Pay Certain Pre-Petition Date Wages,
Salaries, and Related Employee Benefits, and
Directing the Bank to Honor Employee Wage, Salary**

18. The application seeking authority to pay certain pre-Petition Date wages, salaries, and related benefits is critical because the Debtor's employees may stop working if they are not timely paid. The application seeks to pay employees' accrued and unpaid pre-Petition Date wages, salaries, and related benefits, for the period June 1, 2016 through and including the Petition Date, in amounts which do not exceed the priority limits set forth in Bankruptcy Code § 507(a)(4). In addition, the application seeks entry of an order directing

the Debtor's payroll and human resources administrator, or its bank, to honor employee wage and checks, drawn on the Debtor's payroll account.

19. I believe that there are strong and cogent reasons why the relief requested should be granted. In particular, in order for the Debtor to successfully reorganize its business or maximize its value as a going concern in the event of a sale, it must maintain the loyalty of its employees. Without the relief requested, the Debtor's employees would suffer a tremendous hardship.

20. It is respectfully submitted that any delay in paying the employees' compensation will severely disrupt the Debtor's relationship with its employees, and irreparably harm and/or impair their morale at a time when their dedication, confidence and cooperation is critical. In addition, the prompt payment of wages to the Debtor's employees is necessary to avoid causing personal hardships to those individuals and their families.

**Motion to Continue to Use Existing
Cash Management System and Maintain
<u>Existing Bank Accounts and Business Forms</u>**

21. The motion seeking authority to continue using the Debtor's pre-Petition Date cash management system and to maintain its existing pre-Petition Date bank accounts and business forms is critical to ensure the Debtor's compliance with certain guidelines promulgated by the Office of the United States Trustee, without disrupting the Debtor's business operations, and jeopardizing the Debtor's chance for success in this chapter 11 case. I understand that the Office of the U.S. Trustee issued guidelines for debtors in chapter 11 which, among other things, would require the Debtor to close its existing bank accounts, open new accounts and immediately obtain new checks with a "Debtor in Possession" designation on them.

22. The Debtor maintains five (5) bank accounts with M&T Bank. If the Debtor is required to strictly comply with those U.S. Trustee guidelines, its continued operations in

chapter 11 will be negatively impacted by the disruption, confusion, and delay that would most certainly result.

23. The Debtor believes that its transition into chapter 11 will be more orderly, with minimal costs, if all Bank Accounts are continued following the Petition Date with the same account numbers; provided, however, that checks issued on account of prepetition claims will not be honored, absent a prior order of the Court. By preserving business continuity and avoiding the disruption and delay to the Debtor's collection and disbursement procedures that would necessarily result from closing the Bank Accounts and opening new accounts, all parties in interest, including employees, vendors, and customers, will be best served.

24. In addition, to minimize expenses, the Debtor further requests that it be authorized to continue to use its correspondence and business forms including, but not limited to, purchase orders, invoices, checks, letterhead, envelopes, and other business forms, substantially in the forms existing immediately before the Petition Date, without reference to its status as debtor in possession; provided, however, that after entry of an order granting this application the Debtor shall print "Debtor in Possession" and the chapter 11 case number under which this case is being administered on any new check stock. The Debtor will also replace its existing stock of business forms with new forms identifying it as a debtor-in-possession as existing forms are depleted.

25. The relief requested in the Debtor's motion will also spare the Debtor the interruption in collecting its receivables, and reduce expenses as collections will be delayed if the Debtor's customers are required to change the payment information in their remittances. Moreover, M&T Bank is an approved depository under the guidelines promulgated by the U.S. Trustee.

**Information Required By Local Rule 1007-2**

26.     It is my understanding that Local Rule 1007-2 requires the Debtor to disclose certain information relating to the Debtor's assets, liabilities and financial condition. That information is set forth in **Exhibit A** annexed hereto.

## **CONCLUSION**

27.     The Debtor believe that under the protection of this Court, it will be able to maximize the value of its assets for the benefit of creditors and other stakeholders.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 8, 2016

 *s/ Roy Rathbun*
 Roy Rathbun