**SILVERMANACAMPORA LLP**
Proposed Attorneys for Holsted Marketing, Inc.
100 Jericho Quadrangle, Suite 300
Jericho, New York 11753
(516) 479-6300
Gerard R. Luckman
Brian Powers

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

    HOLSTED MARKETING, INC.
      d/b/a Holsted Jewelry,

                            Debtor.
-----------------------------------------------------------x

Chapter 11

Case No. 16-11683 (JLG)

**EMERGENCY APPLICATION FOR
ORDERS (1) AUTHORIZING THE DEBTOR TO INCUR POST-
PETITION FINANCING, ON AN INTERIM AND FINAL BASIS, WITH
SUPERPRIORITY OVER ADMINISTRATIVE EXPENSES AND SECURED BY
SUPERPRIORITY LIENS PURSUANT TO 11 U.S.C. §§105(a), 361, 364(c) AND
364(d), (2) AUTHORIZING THE USE OF CASH COLLATERAL PURSUANT TO
11 U.S.C. §363(c), AND (3) SCHEDULING A FINAL HEARING AND ESTABLISHING
NOTICE REQUIREMENTS PURSUANT TO BANKRUPTCY RULES 2002 AND 4001**

Holsted Marketing, Inc. d/b/a Holsted Jewelry (the "**Debtor**"), the above-captioned debtor and debtor-in-possession, submits this (the "**Application**") seeking the entry of interim and final orders authorizing and approving the terms and conditions under which the Debtor may use cash collateral and obtain debtor in possession financing, and scheduling a final hearing thereon, and in support of the Application, respectfully sets forth and represents as follows:

**SUMMARY OF RELIEF REQUESTED**

1.    By this Application, the Debtor requests entry of an order pursuant to §§105, 361, 362, 363, and 364 of title 11, United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York (the "**Local Rules**"), (i) authorizing the use of "cash collateral," as such term is defined Bankruptcy Code §363, in

which Rosenthal & Rosenthal, Inc. ("**R&R**", or the "**Prepetition Lender**") has an interest (the "**Cash Collateral**"), (ii) authorizing the Debtor to obtain Debtor in Possession financing ("**DIP Financing**") from R&R pursuant to terms substantially similar to its prepetition agreement with the Debtor with any exceptions noted herein, (iii) providing adequate protection (as hereinafter defined) to R&R and Versant Supply Chain, Inc. ("**Versant**"), the Debtor's fulfillment warehouse; (iv) vacating and modifying the automatic stay imposed by Bankruptcy Code §362 to the extent necessary to implement and effectuate the terms and provisions of any such Order; and (v) scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") to be held before this Court to consider entry of a final order approving (a) the Debtor's obtaining DIP Financing and use of Cash Collateral and (b) the grant of adequate protection to R&R and Versant, all on a final basis (the "**Final Order**").  A proposed interim order (the "**Interim Order**") is annexed hereto as **Exhibit A**.    In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the proposed DIP Financing and use of Cash Collateral:

- A.   <u>Cash Collateral and DIP Financing</u>

    - (i)    <u>Parties with an Interest in the Cash Collateral</u>.  The party with an interest in the Cash Collateral is R&R.

    - (ii)   <u>DIP Financing and Use of Cash Collateral</u>.  The Debtor shall obtain DIP Financing and use Cash Collateral to fund the operation of its business and in accordance with the DIP budget (the "**Initial Approved Budget**") setting forth on a line-item basis the Debtor's anticipated cumulative cash receipts and expenditures on a weekly basis and all necessary and required cumulative expenses which the Debtor expects to incur during each week of the Initial Approved Budget. Interim Order at ¶ 4. A copy of the Initial Approved Budget is annexed hereto as **Exhibit B**.

    - (iii)  <u>Events of Default</u>.  The occurrence of any of the following events shall constitute an event of default:

        - (a) The Court enters an order authorizing the sale of all or substantially all assets of the Debtor that does not provide for the payment in full to Rosenthal of its claims in cash upon the closing of the sale, unless otherwise agreed by Rosenthal in its sole and absolute discretion;

2

(b) The Court enters an order granting relief from the automatic stay to a third party with respect to assets of the Debtor's estate;

(c) The Debtor ceases operations of its present business as such existed on the Petition Date or takes any material action for the purpose of effecting the foregoing without the prior written consent of Rosenthal, except to the extent contemplated by the Budget;

(d) The Debtor's bankruptcy case is either dismissed or converted to a Chapter 7 case, pursuant to an order of the Court, the effect of which has not been stayed;

(e) A Chapter 11 trustee, an examiner, or any other responsible person or officer of the Court with similar powers is appointed by order of the Court, the effect of which has not been stayed;

(f) A change in the Debtor's ownership or management occurs, in a manner that is not acceptable to Rosenthal, in its sole discretion;

(g) This Order is reversed, vacated, stayed, amended, supplemented or otherwise modified in a manner which shall, in the sole opinion of Rosenthal; (i) materially and adversely affect the rights of Rosenthal hereunder, or (ii) materially and adversely affect the priority of any or all of Rosenthal's claims and/or the liens granted herein;

(h) The occurrence, subsequent to the Petition Date, of an Event of Default under the Rosenthal Documents, as modified and supplemented herein, including, but not limited to, Rosenthal's making of any overadvances above $600,000.00 under the Rosenthal Documents, as modified and supplemented herein. Any Event of Default occurring and/or existing as of the Petition Date or solely because of the commencement of the Debtor's bankruptcy case on the Petition Date shall not constitute an Event of Default under this Order;

(i) The Debtor expends any funds or monies for any purpose other than those set forth on the Budget within a variance of ten (10) percent, or the Debtor's net cash flow, as set forth in the Budget, is more than ten (10) percent less than the net cash flow projections set forth in the Budget at any time;

(j) The occurrence of a material adverse change, including without limitation any such occurrence resulting from the entry of any order of the Court, or otherwise in each case

3

        as determined by Rosenthal in its sole and absolute discretion in: (1) the condition (financial or otherwise), operations, assets, business or business prospects of the Debtor; (2) the Debtor's ability to repay Rosenthal; and/or (3) the value of the Rosenthal Collateral;

(k)    Any material and/or intentional misrepresentation by the Debtor in any financial reporting or certifications to be provided by the Debtor to Rosenthal;

(l)    Non-compliance or default by the Debtor with any of the terms and provisions of this Order or the Rosenthal Documents; provided, however, that said non-compliance or default shall not be deemed an Event of Default if curable and cured by the Debtor within seven (7) days after notice of such non-compliance or default is given to the Debtor by Rosenthal;

(m)    The failure to obtain entry of a Final Order authorizing DIP Financing on or before July 13, 2016 or such time as may be extended upon the consent of Rosenthal.

Interim Order at ¶15.

(iv)    <u>Adequate Protection</u>.  Subject to the Carve Out, as defined below, pursuant to §§ 364(c) and 364(d) of the Bankruptcy Code, as security for all of the post-petition obligations of the Debtor to Rosenthal under the Rosenthal Documents for the DIP Financing, the Debtor hereby conveys and Rosenthal is hereby is granted a continuing first priority, non-avoidable, senior lien, and security interest in and to all of the pre-and post-petition assets of the Debtor presently owned or hereinafter acquired, wherever located, of any kind and nature, including but not limited to the Collateral[1] described in the Rosenthal Documents together with the proceeds and products thereof, including but not limited to accounts receivable and inventory, wherever located whether in possession of the Debtor or third parties, (excluding claims which have or may be commenced under §§ 544, 547, 548 and 550 of the Bankruptcy Code and the proceeds and products thereof).  Interim Order at ¶ 5.  In addition, to the extent that Versant holds a valid lien on the Debtor's inventory in Versant's warehouse (the "**Pre-Petition Warehouse Collateral**"), as adequate protection for the Debtor's use of the Pre-Petition Warehouse Collateral (and solely to the extent of any diminution in the value of Versant's interest in the Pre-Petition Warehouse Collateral) and the imposition of the automatic stay, to secure any diminution in Versant's interests in the Pre-Petition Warehouse Collateral from and after the Petition Date, the Debtor shall grant to Versant a replacement lien in all of

---

[1] Capitalized terms not defined in this Order shall have the meaning provided in the Rosenthal Documents.

the Debtor's presently owned or hereafter acquired inventory in Versant's possession (the "**Postpetition Warehouse Lien**"). Interim Order at ¶ 4.

(v) Carve Out. The pre-petition liens, Replacement Lien, the Superpriority Claim and the DIP Liens shall be subject to the following, with any amounts so paid or otherwise funded by R&R being DIP Advances secured by the DIP Liens: (i) Quarterly fees, and interest thereon, of the United States Trustee and other fees due the United States Bankruptcy Court pursuant to 28 U.S.C. § 1930 and any fees due to the Clerk of the Court; (ii) Allowed professional fees and expenses of up to $25,000.00 total of the professionals retained by the Debtor and any Official Committee of Unsecured Creditors (the "**Committee**"), if appointed, pursuant to final Bankruptcy Court Order, (iii) any cost and fees of a Chapter 7 Trustee, should one be appointed, however, not to exceed the amount of $7,500 (the "**Carve Out**"). Any amount of the Carve Out paid or otherwise funded by Rosenthal shall be treated as advances under the DIP Financing. Interim Order at ¶24.

(vi) Maturity Date. The Maturity Date of the DIP Financing is January 31, 2017. Interim Order at ¶ 13(d).

(vii) Determination of the Validity, Enforceability, Priority, and Amount of the Prepetition Obligations. Subject to the right of a creditors' committee, if any, to challenge within sixty (60) days from the appointment of such counsel, or if no committee is formed or if the committee fails to appoint counsel, any party-in-interest within sixty (60) days from the date of entry of a Final Order (or a longer period for cause shown before the expiration of such period), to challenge the amount and the validity of liens securing the Prepetition Obligations, the Interim Order contains acknowledgments by the Debtor as to the validity, enforceability, priority and amount of the Prepetition Secured Obligations. Interim Order at ¶27.

B. Postpetition Financing. The salient terms of the DIP Financing are set forth at ¶ 24 hereof.

C. Extraordinary Provisions

(i) The following are terms of the proposed DIP Financing and use of Cash Collateral that are considered to be "Extraordinary Provisions" under Local Rule 4001-2.

(a) Termination Date. In the absence of a further order of this Court, the Debtor shall no longer be authorized to use Cash Collateral or obtain advancing under the DIP Financing without the written consent of the Prepetition Lender after the earliest to occur of (i) the confirmation of a

5

   plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; (vii) January 31, 2017 (unless otherwise extended by the Prepetition Lender); or (viii) upon the date that R&R delivers a notice to the Debtor of an Event of Default. *See* Default provisions and section A(iii) above, Interim Order at ¶¶ 13 and 15.

(b) <u>Waivers and concessions as to the validity of prepetition debt</u>. The Debtor has agreed not to contest the validity or amount of the debt owed to the Lender or the validity and priority of the liens securing the Lender's claim. The Committee, if appointed, and all non-Debtor parties in interest (including any trustee appointed or elected in the case prior to the Challenge Deadline) shall have time in accordance with Local Rule 4001-2(f) to investigate the validity, perfection, and enforceability of the Prepetition Liens, Prepetition Secured Obligations or to assert any other claims or causes of action against the Prepetition Lender. The Committee, if one is appointed, shall have sixty (60) days from the appointment of such counsel, or, if no Committee is formed or the Committee fails to appoint counsel, any party-in-interest, may commence a Challenge proceeding provided such action is commenced within sixty (60) days from the entry of a Final Order (or a longer period for cause shown before the expiration of such period). The Debtor believes that this is appropriate because it gives sixty (60) days after the appointment of a Committee and its counsel, which could be much longer than the initial period provided for under the Local Rule. Interim Order at ¶ 27.

(c) <u>Continued Credit Arrangement</u>. Under the DIP Facility (as defined below), R&R shall continue to make post-petition loans to the Debtor, at the Debtor's request, which in the aggregate shall not exceed the lesser of (i) the Maximum Credit Facility (as defined in Section 1.19 of the Credit Agreement, as modified by the Interim and Final Orders), or (ii) the Loan Availability, which means the Receivables Availability and the Maximum Inventory Availability which have been validly assigned to R&R and in which R&R holds a perfected security interest. Interim Order at ¶ 13. Any Net Amount of Eligible Processor Receivables (as defined in Credit Facility Agreement) that were obligations to the Debtor before the Petition Date shall continue to be collected, and any amounts due to Debtor as a result shall

be paid to Debtor in the same manner as they were before the Petition Date.

## BACKGROUND

2. On June 8, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court.

3. The Debtor provides multi-channel marketing strategies for its retail clients and under its own brand, Holsted Jewelers. The Debtor's primary business is the promotion of merchandise through the utilization of mailing lists obtained from its clients as well as direct to the consumer. The Debtor also sells merchandise on its web site, HolstedJewelers.com, and merchandise on a wholesale basis to its direct marketing clients.

4. Additional information about the Debtor's business and the events leading up to the Petition Date can be found in the "Declaration of Roy Rathbun Under Local Rule 1007-2 in Connection with Chapter 11 Filings and in Support of Certain 'First Day' Motions," dated June 8, 2016 (ECF Doc. No. 5).

5. The Debtor finances its operations through a financing agreement, dated August 7, 2013 (the "**Credit Facility**") with R&R. Under the Credit Facility, R&R provides financing of up to $2 million, subject to certain limits based on the value of the Debtor's inventory and accounts receivable. The loan from R&R is secured by a first-priority security interest in substantially all of the Debtor's assets. As of June 3, 2016, the Debtor was indebted to R&R under the Credit Facility in the amount of approximately $1,238,107.72.

6. The Debtor has provided R&R with a 13-week financial forecast and, based on that forecast, R&R has agreed to the Debtor's use of cash collateral and to provide postpetition financing to the Debtor upon terms set forth herein.

7. The Debtor has sought protection under chapter 11 to remedy its illiquidity immediately through emergency debtor-in-possession financing provided pursuant to Bankruptcy Code §364, in order to enable it to preserve the value of its assets as a going concern. The Debtor expects to move quickly to put forth a chapter 11 plan but, in the interim,

7

the Debtor's operations require sufficient levels of working capital to fund and support ordinary business expenditures, including payroll, expenses for processing and shipment of orders, taxes and other necessary overhead costs.

8.  Absent access to emergency financing, the Debtor will not have sufficient liquidity to continue production and order fulfillment operations, resulting in immediate and irreparable harm to the Debtor's creditors, its estate, and its employees.  Implementation of the post-petition financing arrangements summarized herein at the onset of this case is critical to avoid immediate and irreparable harm to the estate, and to support Debtor's effort to maximize the estate for the benefit of all creditors and parties-in-interest.

9.  At this time, R&R has indicated a willingness to advance funding required to meet the cash requirements of the Debtor's restructuring process and provide the Debtor with a period of time with which to either propose a plan to restructure the Debtor's business or market the Debtor's business for sale.

10. Accordingly, by this Application, Debtor seeks entry of the Interim Order and final the Final Order (collectively, the "**Borrowing Orders**");

    a)    pursuant to Bankruptcy Code §§364(c)(1), (2), (3) and (d) and §§503(b) and 507 and Bankruptcy Rule 4001(c), authorizing, on an interim basis, the Debtor to obtain post-petition financing in the form of a $1.5 million Maximum Credit Facility pursuant to the terms of the DIP Facility, among the Debtor and R&R, and granting to R&R superpriority administrative expense claim status pursuant to Bankruptcy Code §§364(d)(1), 503(b) and 507 and a superpriority lien on and security interest in substantially all of the assets of the Debtor, all in accordance with the terms and conditions of the DIP Facility;

    b)    approving the terms and conditions of the DIP Facility and authorizing the Debtor to execute and deliver, from time to time, all such documents, instruments and agreements and perform such other acts as may be required, necessary or desirable in connection with the DIP Facility including, without limitation, the payment of all fees, interest and charges required under the DIP Facility;

    c)    granting, pending the Final Hearing, authorization of borrowing

        under the DIP Facility of $1.5 million (the "**Interim Amount**"),[2] pursuant to the Interim Order in the form annexed hereto and made a part hereof as **Exhibit "A"**;

  d)  authorizing the Debtor, after entry of a Final Order, to borrow up to an aggregate of $1.5 million in connection with the production of goods and fulfillment of order to its customers;[3]

  e)  authorizing use of cash collateral of R&R on an interim basis pursuant to Bankruptcy Code §363(c)(2)(b) and granting R&R adequate protection for the use of cash collateral, through replacement liens on post-petition assets and a superpriority administrative expense claim;

  f)  modifying the automatic stay provisions of Bankruptcy Code §362 to the extent necessary to permit R&R to implement the terms and provisions of the DIP Facility and the provisions of the Borrowing Orders;

  g)  scheduling and approving the form and manner of notice of the Final Hearing to consider entry of the Final Order granting the relief sought herein on a permanent basis; and

  h)  granting the Debtor such further relief as is just and proper.

11.    The Debtor is authorized to remain in possession of its property and to continue in the operation and management of its business as a debtor-in-possession under Bankruptcy Code §§1107 and 1108.

12.    To date, no committee, trustee, or examiner has been appointed in this matter.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York, dated January 31, 2012 (Preska, C.J.).

14.    This is a core proceeding pursuant to 28 U.S.C. §157(b).

15.    Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

16.    The statutory predicates for the relief requested herein are Bankruptcy Code

---

[2] The amount varies up or down on a daily basis as receivables are collected and payments under the budget are made. The Debtor estimates that during the Interim Period the balance will not exceed $1.25 million.

[3] *See, infra n. 3.*

9

§§105, 361, 362, 363, and 364, Bankruptcy Rules 2002, 4001, and 9014, and Local Rule 4001-2.

## PROPOSED DEBTOR-IN-POSSESSION FINANCING

17. The Debtor's reorganization efforts hinge on access to adequate post-petition financing to maintain purchaser and order fulfillment operations so that the Debtor can remain a going concern. While the Debtor also seeks the use of R&R's cash collateral, the Debtor is concerned that without DIP financing available, there may be temporary periodic cash shortfalls during the chapter 11 case. It is axiomatic that a business, such as the Debtor's, requires sufficient liquidity to satisfy its ongoing cash requirements, to purchase inventory for new sales, pay employees, pay utilities and to fund myriad other ordinary course day-to-day expenditures. During the initial weeks of this case, the Debtor's current assets (cash, inventory, accounts receivable) will not be sufficiently liquid to satisfy such obligations in the ordinary course of business, absent access to post-petition financing.

18. In addition, the Debtor's suppliers, vendors and other creditors are looking to the immediate approval of the DIP Facility for assurance that they will be paid on a continuous and timely basis. The Debtor's employees see the DIP Facility as necessary to ensure timely payment of payroll and other employee-related obligations. The ongoing cooperation of suppliers, vendors and employees is critical if the Debtor is to continue to operate in an orderly and reasonable manner which seeks to preserve and enhance the value of its assets for the benefit of all parties-in-interest.

19. Without immediate access to credit pursuant to the proposed DIP Facility and to the cash collateral, there would be a precipitous termination of the Debtor's business that would destroy the going-concern value of the Debtor's assets, resulting in immediate and irreparable harm to the Debtor's estate. Quite simply, the importance of the Debtor's immediate need for post-petition financing and use of cash collateral cannot be overstated.

BPOWERS/1926697.2/066149

20. Debtor has determined, in the exercise of its considered business judgment in consultation with its retained professionals, that it requires immediate use of borrowing under the DIP Facility up to $1.5 million on an interim basis, with the amounts varying depending on receivables collected, and final authorization of the full DIP Facility thereafter. Such authorization will enable Debtor to meet its immediate credit obligations and provide it with sufficient liquidity to continue operations until it can negotiate and confirm a plan of reorganization.

**Overview of Proposed DIP Facility**

21. Due to the exigencies and the nature of Debtor's business, the Debtor determined that it was in its best interest to obtain post-petition financing from R&R, which was the Debtor's prepetition secured lender. Based on a review of comparable recent debtor-in-possession financing arrangements, the Debtor believes that the terms and conditions of the DIP Facility are reasonable under the circumstances. While there will be some expenses associated with continuing its financing with R&R, the Debtor believes that such costs will be far less than a new lender would require. Further, R&R was the Debtor's prepetition lender, and the Debtor expects that R&R will also be the lender to the reorganized Debtor under a confirmed plan of reorganization.

22. Moreover, the Debtor believes that the DIP Facility offered by R&R is the best deal presently available to it. First, the Debtor will not have to pay all of the usual due diligence, origination and commitment fees associated with such financing. Second, the Debtor can avoid costly and protracted litigation over priming R&R that would likely occur if it used another lender. Indeed, the Debtor projects that the DIP Facility will improve its liquidity and help stabilize its operations until the reorganization process may be completed, a result which the Debtor believes would not be possible except through the DIP Facility. The Debtor is certain that it would not be able to obtain unsecured credit allowable under Bankruptcy Code §503(b)(1) as an administrative expense, or secured solely by liens and security interests junior to those of pre-

petition lenders on better terms than that which is proposed herein.

23. R&R has agreed to provide Debtor with an immediate use of up to $1.5 million of the DIP Facility, pending a final hearing. As could be expected in the Debtor's financial posture, R&R requires that the DIP Facility be (a) entitled to superpriority administrative expense status pursuant to Bankruptcy Code §364(c) and otherwise over all administrative expenses of the kinds specified in Bankruptcy Code §§105(a), 326, 328, 330, 331, 503(b), 506(c), 507, 546(c), 726 and 1114 and (b) secured by superpriority status pursuant to Bankruptcy Code §364(d)(1) over senior liens on and security interests in substantially all of the Debtor's assets subject only to the Carve Out. R&R has agreed, however, to allow the Debtor a Carve Out described in detail above toward the payment of professional fees incurred by the estate.

24. A brief summary of certain of the key provisions of the DIP Facility follows; the Court and parties-in-interest, however, are respectfully referred to the proposed DIP Order for a full recitation of the terms and conditions of the DIP Facility.

| | |
|---|---|
| Borrower: | Holsted Marketing, Inc. |
| Lender: | R&R |
| Commitment Availability: | Revolving loan with Maximum Credit Facility up to $1.5 million for the following limited uses as set forth in the budget in connection with the purchase of goods and the fulfillment of orders to its customers: (i) payroll and related costs; (ii) payment of expenses in connection with the processing of orders and shipment of orders; (iii) payment of post-petition utilities; (iv) payment of Chapter 11 reorganization expenses as provided in the Initial Approved Budget; and (v) necessary office expenses and other expenses of administering this case, all in accordance with an approved budget. |
| Priority and Liens: | All borrowings under the DIP Facility shall be:<br>(i) entitled to superpriority administrative expense claim status pursuant to Bankruptcy Code §§364(c)(1), (2) and (3), superior to any and all administrative expense of the Debtor, except for the Carve Out; and (ii) secured pursuant to Bankruptcy Code §346(d)(1) by superpriority lien over senior security interests in and liens upon all now owned or hereafter acquired assets and property of the estates, real and personal, of the Debtor, as set forth more fully in the Borrowing Orders. |

| | |
|---|---|
| Term: | Provided that no other event of default has occurred, the terms of the DIP Facility shall end on the date that is the earliest to occur of (i) the confirmation of a plan of reorganization for the Debtor; (ii) the sale of substantially all of the assets of the Debtor; (iii) the conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code; (iv) the appointment of a trustee under Chapter 11 of the Bankruptcy Code; (v) the appointment of an examiner with expanded powers under the Bankruptcy Code; (vi) the Debtor's ceasing and discontinuing its ordinary business operations; or (vii) January 31, 2017. |
| Conditions Precedent: | The availability of the DIP Facility is conditioned upon satisfaction of usual and customary conditions precedent including, among other things entry of the Interim Order and the Final Order, each in form and substance satisfactory to R&R in its sole discretion, which Borrowing Orders shall contain provisions granting R&R a superpriority lien pursuant to Bankruptcy Code §§364(c)(1), (2) and (3), 503(b), 507 and 364(d)(1) on the Collateral and provide that its claim has the priority set forth under Bankruptcy Code §§364(c)(1), (2) and (3), 503(b) and 507(b) over all administrative expenses incurred in these Chapter 11 cases, subject to the Carve Out. |
| Modifications to Prepetition Credit Facility: | |
| | (i) Maximum Credit Facility: Shall mean $1.5 million down from $3.0 million as set forth in the Credit Agreement. |
| | (ii) Net Worth and Working Capital: The Debtor shall maintain a minimum Tangible Net Worth of not less than –$3,500,000 and a minimum working capital of not less than –$1,750,000 by Rosenthal measured at the end of each of the Debtor's fiscal quarters. |
| | (iii) Additional Collateral: Collateral for the DIP Facility shall now include all of the Debtor's Pre- and Post-Petition assets including but not limited to the assets set forth in Section 4.1 of the Rosenthal Documents. |
| Modification of Automatic Stay and Notice Periods: | The DIP Facility provides for a modification of the automatic stay and notice Periods to allow R&R to exercise certain remedies upon five (5) days to notice the Debtor, its counsel, counsel for any official committee and the U.S. Trustee, in the event of a default under the Borrowing. |

25.  The Debtor believes that the terms of the DIP Facility are reasonable and fair under the circumstances and, therefore, obtaining the DIP Facility serves the best interests of the Debtor, its creditors, and its estate.

13

**BASIS FOR APPROVAL OF THE DIP FACILITY
AND THE GRANTING OF LIENS AND SUPERPRIORITY
<u>ADMINISTRATIVE CLAIMS IN CONNECTION THEREWITH</u>**

26. Bankruptcy Code §364 authorizes this Court to allow the Debtor to obtain post-petition financing from R&R in the manner proposed by R&R in the DIP Facility. As described above, as security for all borrowings under the DIP Facility, the Debtor proposes to grant R&R a superpriority administrative claim and a superpriority lien on and security interest in all or substantially all of the Debtor's assets, subject only to the Carve Out. Such relief is authorized pursuant to Bankruptcy Code §§364(c)(1)(2) and (3), 364(d)(1), 503(b) and 507.

27. The granting of superpriority administrative credit is allowable under Bankruptcy Code §364(c) which provides:

> If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring debt –
>
> (1) with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of this title;
> (2) secured by a lien on property of the estate that is not otherwise subject to a lien; or
> (3) secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. §364(c).

28. The granting of superpriority lien status is governed by Bankruptcy Code §364(d)(1) which provides:

> (d)(1) The Court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien if –
>
> (A) the trustee is unable to obtain such credit otherwise; and
>
> (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted

11 U.S.C. §364(d)(1).

29. Since the term "adequate protection" is not defined in the Bankruptcy Code,

courts have held that the precise contours of the concept must be determined on a case-by-case basis. *See, e.g., In re O'Connor,* 808 F.2d 1393, 1396 (10th Cir. 1987). The focus of the requirement is to protect a secured creditor from diminution in the value of its interest in collateral during the reorganization process. *See, e.g., In re Beker Indus. Corp.,* 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986).

### REQUEST FOR IMMEDIATE BORROWINGS AND USE OF CASH COLLATERAL ARE NECESSARY TO AVOID IRREPARABLE HARM

30. Pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2), a minimum of 15 days' notice is required before a final hearing on this Application may commence. Bankruptcy Rules 4001(b)(2) and (c)(2) also provide, however, that the Court may conduct a hearing before such 15 day period expires, and may authorize the obtaining of credit and the use of only that amount of cash collateral necessary to avoid immediate and irreparable harm to the estate pending a final hearing. FED. R. BANKR. P. 4001(c)(2).

31. As stated above, it is essential to the continued operation of its business that the Debtor be authorized by this Court to obtain interim financing and use of cash collateral on an interim basis as set forth herein pending the final hearing on the Application. Because the Debtor's prepetition facility is a factoring arrangement, the Debtor had little to no cash on the Petition Date, due to R&R's receipt of the Debtor's accounts receivable daily through blocked account arrangements. Funds are urgently needed to meet all of the Debtor's working capital needs, and to preserve the going concern value of the Debtor. In the absence of immediate post-petition financing and the use of cash collateral, the Debtor's attempts to maximize its value for creditors would be immediately and irreparably jeopardized.

32. The Debtor believes that the terms and conditions of the DIP Facility represent the most favorable option for post-petition financing and for all of the foregoing reasons, are in the best interest of the Debtor, its estate and its creditors. Accordingly, the Debtor respectfully requests that, pending a final hearing on the Application, the terms and provisions of the DIP

Facility be implemented and approved on an emergency interim basis, to the extent of authorizing the Debtor to obtain interim post-petition financing under the DIP Facility in an aggregate amount not to exceed $1.5 million, on the terms and subject to the conditions set forth in the DIP Facility.

33.    The Debtor further submits that the terms and conditions of the DIP Facility are fair and reasonable and are the result of arms' length negotiations between Debtor and R&R. R&R has even waived many of the customary fees and expenses that one would otherwise expect to be elements of a DIP transaction. Accordingly, R&R should be accorded the benefits of Bankruptcy Code §364(e) in respect of the DIP Facility.

34.    As is apparent from the foregoing, the interim relief requested in this Application, pending the Final Hearing, is necessary, appropriate and fully warranted, and is essential to avoid immediate and irreparable harm to the Debtor, its estate and its creditors.

## NOTICE WITH RESPECT TO THE INTERIM HEARING

35.    The Debtor will provide notice by electronic transmission, facsimile or overnight mail of this Application pursuant to Bankruptcy Rule 4001 to (a) the Office of the United States Trustee for Region 2, (b) attorneys for R&R, (c) the Debtor's twenty largest creditors, or counsel to the Committee, if one is appointed, (d) the Debtor's remaining secured creditors, (e) the Debtor's warehouses, and (f) all parties who have requested notice in this case. The Debtor respectfully submits that such notice is sufficient and requests that this Court find that no further notice of the relief requested herein is required.

## NOTICE WITH RESPECT TO THE FINAL HEARING

36.    The Debtor also proposes to serve a copy of the Interim Order, this Application (together with exhibits) and Notice of the Final Hearing on entry of the Final Order by first class mail, within two (2) days after entry of the Interim Order, upon (a) the Office of the United States Trustee, (b) attorneys for R&R, (c) the Debtor's twenty largest creditors, or counsel to the Committee, if one is appointed, (d) all of the Debtor's remaining creditors, and (e) all parties that

16

have filed notices of appearances and requests for notices in the Debtor's chapter 11 case.

37. The Debtor respectfully submits that such notice is sufficient, and requests that this Court find that no further notice of the Interim Order, the Final Hearing, the Final Order and all proceedings to be held in connection therewith is required.

38. No previous application for the relief sought herein has been made to this or any other Court.

**WHEREFORE,** the Debtor respectfully requests that the Court: (a) enter the Interim Order (1) authorizing the Debtor to use cash collateral on an interim basis and to obtain financing pursuant to the DIP Facility on an interim basis through the conclusion of the Final Hearing on the terms set forth herein and the DIP Facility and to use cash collateral on the interim basis, and (2) scheduling a Final Hearing; (b) enter the Final Order authorizing the Debtor to use cash collateral and to obtain financing under the DIP Facility on the terms set forth herein and in the DIP Facility; and (c) grant the Debtor such further relief as is just and proper.

Dated: Jericho, New York　　　　　　**SILVERMANACAMPORA LLP**
　　　　June 8, 2016　　　　　　　　Proposed Attorneys for Holsted Marketing, Inc.


　　　　　　　　　　　　　　　　　　By: _s/ Gerard R. Luckman_
　　　　　　　　　　　　　　　　　　　　Gerard R. Luckman
　　　　　　　　　　　　　　　　　　A Member of the Firm
　　　　　　　　　　　　　　　　　　100 Jericho Quadrangle, Suite 300
　　　　　　　　　　　　　　　　　　Jericho, New York 11753
　　　　　　　　　　　　　　　　　　(516) 479-6300

BPOWERS/1926697.2/066149